UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )
)
IN RE: ) CASE NO. 09-30987 (LMW)
)
   ELAINE CHEZ, ) CHAPTER 7
)
          DEBTOR. ) ECF NO. 54
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

Andrea Anderson, Esq.                Attorney for the Debtor
Law Offices of Andrea Anderson, LLC
182 Grand Street, Suite 401
Waterbury, CT 06702

Elaine Chez                        Debtor
201 Merwin Avenue
Milford, CT 06460

Barbara H. Katz, Esq.           Chapter 7 Trustee
57 Trumbull Street
New Haven, CT 06510

## MEMORANDUM OF DECISION AND ORDER RE: ORDER TO SHOW CAUSE WHY ATTORNEY'S FEES SHOULD NOT BE DISGORGED AND REQUIRING ATTENDANCE OF THE DEBTOR AND ANDREA ANDERSON, ESQ.

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

     The matter (the "Matter") before the court is that certain Order To Show Cause Why

Attorney's Fees Should Not Be Disgorged and Requiring Attendance of the Debtor and Andrea

Anderson, Esq. (ECF No. 54, the "OTSC").[1]  The court has jurisdiction over the Matter as a core

---

[1]     References herein to the docket of this chapter 7 case (the "Case") appear in the following form: "ECF No. __."  The OTSC was issued pursuant to Rule 2017 of the Federal Rules of Bankruptcy Procedure.  The respondent named in the OTSC is the above-referenced debtor's (the

proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984

of this District (Daly, C.J.).[2]

This memorandum constitutes the findings of fact and conclusions of law required by Rule

7052 of the Federal Rules of Bankruptcy Procedure (made applicable here by Rule 9014 of the

Federal Rules of Bankruptcy Procedure).

## I.   FACTS AND PROCEDURAL BACKGROUND

On or about February 19, 2009, the Debtor retained Attorney Anderson with respect to the

future commencement of the Case.  (*See* Resp. Exh. 1 (the "Retainer Agreement").)  Pursuant to the

Retainer Agreement, the Debtor agreed to pay $1,500.00 for professional services (the "Initial Fee")

for the commencement of this Case through the first meeting of creditors.  She further agreed that

additional fees would be required for certain additional services (including schedule amendments

"Debtor") chapter 7 counsel, Andrea Anderson, Esq. ("Attorney Anderson").  A transcript of the
OTSC Hearing (as that term is hereafter defined) appears in the record as ECF No. 59.  References
herein to that transcript appear in the following form: "Trans. at __."  The Debtor and Attorney
Anderson both introduced documentary evidence into the record at the OTSC Hearing.  References
herein to that evidence appear in the following forms (respectively): "Debtor Exh. __" or "Resp.
Exh. __."

[2]      That order referred to the "Bankruptcy Judges for this District" *inter alia* "all
proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

to add creditors).  (*See id.*)[3]  On the same day, the Debtor paid $1,800.00 in full satisfaction of the

Initial Fee (plus filing fee).  (*See* Resp. Exh. 1.)[4]

On April 22, 2009, the Case was commenced by the filing (through Attorney Anderson) of

a voluntary petition for the Debtor. (*See* ECF No. 1.)  Included with the petition were the Debtor's

initial bankruptcy schedules (included in ECF No. 1, the "Initial Schedules").  The Initial Schedules

disclosed the following relevant assets: Common Stock (the "Stock") in "Manulife Financial" with

a stated value of $0.00; "First Connecticut Credit Union Joint Account w/Mother Just to Pay the

Mortgage" (the "Account") with a stated value of $1,518.60; a 1999 Buick Reg [sic] GS/GSE (the

---

[3]       There was an attachment to the Retainer Agreement which bore the following legend:
"The Following Terms, Conditions, and Understandings Are Part Of This Retainer Agreement."
(*See id.*)  That attachment provided in relevant part as follows:

> **FULL DISCLOSURE REQUIRED:**  . . . .  I know that my attorney **CANNOT**
> promise me what assets I may keep as this depends upon information not available
> to my attorney at this time . . . .
>
> **ADDITIONAL ATTORNEY FEES:**  I understand that my attorney has given me
> as firm a fee quote as is possible at this time.  My attorney is quoting me fees needed
> to process my case through the first meeting of creditors.  In most instances this will
> be the complete fee.  There are, however, certain events for which I may need the
> services of my attorney that will require me to pay additional fees.  These events
> include my needing my attorney to prepare and file Suggestions of Bankruptcy in any
> other litigation (such as foreclosure lawsuits) that may be filed against me.  I also will
> be charged and agree to pay additional attorney fees if my attorney is needed to assist
> me in negotiating with any creditors, resisting any objections filed by my creditors,
> or negotiating reaffirmation agreements or avoiding liens, or attending depositions,
> meetings, examination or hearings required beyond the first meeting of creditors.  I
> agree to pay my attorney additional fees at the rate of $300.00 per hour for these
> services.  I understand that if I amend my pleadings after my case is filed to add
> additional creditors, there is a minimum charge of $150.00 plus court costs.

(Resp. Exh. 1.)

[4]       Certain additional charges were waived.  (*See id.*)

"Buick") with a stated value of $3,070.00 and a 2001 Mitsubishi Galant (the "Galant") with a stated

value of $2,375.00.  (*See* ECF No. 1 (Initial Schedules).)  The Initial Schedules also claimed the

following relevant exemptions pursuant to 11 U.S.C. §§ 522(b) and 522(d):  the Stock with an

exemption under Section 522(d)(5) in the amount of $0.00; the Account with an exemption under

Section 522(d)(5) for the entire stated value of the Account;[5] the Buick with an exemption under

Section 522(d)(2) in the stated amount of $3,070.00; and the Galant with an exemption under

Section 522(d)(2) in the stated amount of $155.00.  (*See* ECF No. 1 (Initial Schedules).)[6]

Also filed with the petition was a "Disclosure of Compensation of Attorney for Debtor(s)"

(included in ECF No. 1, the "Disclosure") executed and filed by Attorney Andersen pursuant to

Rule 2016(b) of the Federal Rules of Bankruptcy Procedure.  The Disclosure provided in relevant

part as follows:

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---:|
| For legal services, I have agreed to accept | $ | 1,500.00 |
| Prior to the filing of this statement I have received | $ | 1,500.00 |
| Balance Due | $ | 0.00 |

. . .

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

---

[5]    The foregoing exemption with respect to the Account was claimed notwithstanding that the amount of such claimed exemption exceeded the available Section 522(d)(5) exemption by $779.19.

[6]    Section 522(d)(2) permits the exemption of only one motor vehicle up to a value of $3,225. *See* 11 U.S.C. § 522(d)(2).

    a.    Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

    b.    Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

    c.    Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

    d.    [Other provisions as needed]

> **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

6.    By agreement with the debtor(s), the above-disclosed fee does not include the following service:

> **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

(ECF No. 1 (Disclosure).)  Subsequent to the meeting of creditors held pursuant to 11 U.S.C. § 341, on May 28, 2009 the chapter 7 trustee (the "Trustee") filed a "Trustee's Report of Assets." (*See* ECF No. 12.)

By correspondence dated May 12, 2009, counsel for FIA Card Services, N.A. ("FIA") asserted that a debt incurred by the Debtor in the amount of $8,992.00 for cash advances and/or convenience check charges during the period from December 24, 2008 to February 4, 2009 was nondischargeable pursuant to 11 U.S.C. § 523(a).  (*See* Resp. Exh. 2.)  FIA demanded either stipulated nondischargeability for the full amount or a one-time cash settlement in the sum of $7,000.00.  (*See id.*)  After consultation with the Debtor, Attorney Anderson rejected that proposal both by telephone and in writing.  (*See id.*)  Attorney Anderson then entered into discussions with FIA's counsel and, ultimately, no nondischargeability action was brought.  (*See* Trans. at 25-26 (testimony of the Debtor); Trans. at 52 (testimony of Attorney Anderson).)  *Cf.* 11 U.S.C. § 523(c).

Attorney Anderson's office also gave the Debtor some assistance with respect to a potential loan modification.  (*See* Trans. at 52 (testimony of Attorney Anderson).)

On July 1, 2009, the Trustee filed a Motion To Compel Turnover of Documents (ECF No. 18, the "First Motion To Compel") asserting that there was $6,108.96 of non-exempt equity with respect to the Stock.  (*See id.*)  On July 10, 2009, the Debtor filed amended Schedules B (personal property) and C (exempt property).  (*See* ECF No. 26, the "Amended Schedules").)  In relevant part, the Amended Schedules:  (a) amended Schedule B by changing the stated value of the Stock from $0.00 to $6,108.96 and (b) amended Schedule C by claiming an exemption under Section 522(d)(5) in the Stock for its full stated value.[7]  On July 15, 2009, the Trustee filed an Objection to Amended Schedule C.  (*See* ECF No. 29, the "Trustee Objection.") The Trustee Objection:  (a) challenged the Debtor's exemption of the Stock in its entirety and (b) challenged the Debtor's exemption of the Account as exceeding the permissible exemption by $779.19.  (*See id.*)  On July 21, 2009, the Debtor paid Attorney Anderson $226.00 (the "Amendment Fee") with respect to the Amended Schedules. (*See* Debtor Exh. A (invoice of even date).)  Attorney Anderson did not amend or supplement the Disclosure to reflect her receipt of the Amendment Fee.[8]

At a hearing (the "7/29/09 Hearing") on July 29, 2009, the Trustee marked off (with right of reclaim) the First Motion To Compel.  The Trustee advised the court that she had spoken to Attorney Anderson and also had been advised by the Debtor that she was going to turn over the Stock.  (*See*

---

[7]      The foregoing exemption with respect to the Stock was claimed notwithstanding that the amount of the Section 522(d)(5) exemption already had been exhausted.

[8]      It appears that Attorney Anderson agreed to render certain other professional services to the Debtor for the payment of $1,200.00 (which does not appear to have been paid).  (*See* Debtor Exh. B (letter dated July 20, 2009 from Ms. Cavallo to the Debtor).)  Those additional services remain undefined and it remains unclear how they would have related to the Case.

Oral Record of 7/29/2009 Hearing at 11:08:55 *et seq.* (remarks of the Trustee).) The Trustee

Objection also came on for a hearing at the 7/29/09 Hearing. (*See* ECF No. 31.) Neither Attorney

Anderson nor the Debtor appeared at that hearing. The Trustee remarked that she was pressing her

objection to the Debtor's exemption of the Stock but said nothing about the Account (which also was

the subject of the Trustee Objection). (*See* Oral Record of 7/29/2009 Hearing, *supra.*) The resulting

order (ECF No. 35, the "Exemption Order") sustained (by default) the Trustee Objection with respect

to both the Stock (in its entire amount)[9] and the Account. Neither Attorney Anderson, the Debtor

nor the Trustee sought reconsideration of or relief from the Exemption Order. The Debtor received

her discharge on July 31, 2009. (*See* ECF No. 36.)

On or about May 6, 2010, the Trustee sent Attorney Anderson a demand letter (the "Demand

Letter") with respect to turnover of $739.31 [sic] non-exempt equity in the Account. (*See* Debtor

Exh. B.)[10] On or about May 24, 2010, the Debtor paid $400.00 (the "First Consultation Fee") for a

consultation with James O'Rourke, Esq. (a bankruptcy attorney). (*See* Debtor Exh. A (proof of

payment).) That consultation was with respect to the Demand Letter and a blank stock transfer

(stock power) form (the "Blank Stock Transfer") in respect of surrender of the Stock. (*See* Trans.

at 12-13 (testimony of the Debtor).)

On August 18, 2010, the Trustee filed a Motion To Compel Turnover of Non-Exempt Equity.

(*See* ECF No. 49, the "Second Motion To Compel.") The Second Motion To Compel sought

turnover from the Debtor of $2,999.29 (in the aggregate) of non-exempt equity with respect to the

---

[9]      However, at the OTSC Hearing, Attorney Anderson testified that the Trustee had agreed to exempt some small portion of the Stock. (*See* Trans. at 54-55 (testimony of Attorney Anderson).) Her memory may or may not be correct in that regard.

[10]      The actual amount in demand appears to have been $779.19. (*Cf.* ECF No. 29.)

Account and the Galant.  (*See id.*; *cf.* ECF No. 35.)[11]  On or about August 25, 2010, the Debtor paid

$400.00 (the "Second Consultation Fee") for a consultation with Dennis Morrissey, Esq. (a third

bankruptcy attorney).  (*See* Trans. at 14 (testimony of the Debtor); Debtor Exh. A.)  That

consultation was with respect to the Second Motion To Compel.

The Second Motion To Compel came on for a hearing (the "9/8/2010 Hearing") on

September 8, 2010.  The Debtor and the Trustee appeared at the 9/8/2010 Hearing; Attorney

Anderson did not.  At the 9/8/2010 Hearing, the Debtor made certain allegations (the "Debtor

Allegations") concerning the inadequacy of Attorney Anderson's representation in the Case.  (*See*

Oral Record of 9/8/2010 Hearing at 10:54:57 *et seq.* (remarks of the Debtor).)[12]  At the conclusion

of the 9/8/2010 Hearing, the Trustee withdrew the Second Motion To Compel on the record (not

addressing what Attorney Anderson "did or did not say" but, rather, "based upon what I am hearing

today").  (*Id.* at 11:05:20 *et seq.* (remarks of the Trustee).)[13]  The next day the Trustee filed a Notice

of Proposed Abandonment or Disposition of Property and Opportunity for Objections Thereto with

respect to the Account and the Galant pursuant to 11 U.S.C. § 554.  (*See* ECF No. 55, the

---

[11]      $779.29 [sic] in respect of the Account and $2,200.00 in respect of the Galant.  (*See* ECF No. 49.)  As noted above, with respect to the Account, the actual amount in demand appears to have been $779.19.  (*See* ECF No. 29.)

[12]      The Debtor Allegations were not made under oath and so are not repeated here.

[13]      With regard to statements made by the Debtor at the 9/8/2010 Hearing with respect to the Blank Stock Transfer, the Trustee stated:

> I used a stock broker.  I did what the stock broker told me.  The stock broker told me "do it again please" and that's why she had to do it a second time and when she signed the blank power, she did not date it and that was why I asked for . . . consent to put the date in.

(*Id.* at 11:05:42 *et seq.* (remarks of the Trustee).)

"Abandonment Notice.")  The Abandonment Notice set an objection deadline of September 30,

2010.  In the absence of objection to the Abandonment Notice, the Trustee filed a Trustee's Report

of Abandonment (*see* ECF No. 57) with respect to the Account and Galant on October 4, 2010.

In light of the Debtor Allegations, on September 8, 2010 the court issued the OTSC.  (*See*

*also* Oral Record of 9/8/2010 Hearing at 11:07:02 *et seq.* (remarks of court).)  The OTSC provided

in relevant part:

> **ORDERED** that the above-referenced debtor's (the "Debtor") attorney of
> record, Andrea Anderson, Esq., shall appear at an evidentiary hearing (the "Hearing")
> on September 29, 2010 at 11:30 a.m. at the United States Bankruptcy Court,
> Connecticut Financial Center, 157 Church Street, 18th Floor, New Haven,
> Connecticut, to show cause why she should not be required to disgorge any fees paid
> (or agreed to be paid) by the Debtor to her with respect to this case; and it is further
>
> **ORDERED** that the Debtor and Attorney Anderson shall appear at the Hearing. . . .

(ECF No. 54.)[14]

The OTSC ultimately came on for an evidentiary hearing (the "OTSC Hearing") on October

12, 2010.  The Debtor and Attorney Anderson both appeared at the OTSC Hearing.  At the beginning

of the OTSC Hearing, the court directed that relevant portions of the oral record of the 9/8/10

Hearing be played back for Attorney Anderson in order that she might hear the Debtor Allegations.

That was done.  When asked by the court, "Do you feel able to go forward?"  (Trans. at 5:15-16),

Attorney Anderson replied, "I feel that I can . . . . I'm not positive that I have all of the information

---

[14]    The OTSC also had a footnote which read:

> At a September 8, 2010 hearing on the record on a motion by the chapter 7 trustee
> (at which Attorney Anderson did not appear), the Debtor made various allegations
> concerning the inadequacy of Attorney Anderson's representation in this case.
> Attorney Anderson will have an opportunity to hear a "play back" of the relevant
> portion of the oral record of that hearing prior to any substantive proceedings at the
> Hearing.

that I need, or the recollection, but I'd like to try," (*id.*: 17-18, 20-23). Both the Debtor and Attorney

Anderson testified and (as noted above) placed documentary evidence into the record at the OTSC

Hearing. The Matter now is ripe for the decision set forth hereinbelow.

## II.    ANALYSIS

### A.    Standards

#### 1.    Section 329

Bankruptcy Code § 329 provides as follows:

> (a)   Any attorney representing a debtor in a case under this title, or in
> connection with such a case, whether or not such attorney applies for compensation
> under this title, shall file with the court a statement of the compensation paid or
> agreed to be paid, if such payment or agreement was made after one year before the
> date of the filing of the petition, for services rendered or to be rendered in
> contemplation of or in connection with the case by such attorney, and the source of
> such compensation.
> (b)  If such compensation exceeds the reasonable value of any such services,
> the court may cancel any such agreement, or order the return of any such payment,
> to the extent excessive, to–
>> (1)  the estate, if the property transferred–
>>> (A)  would have been property of the estate; or . . .
>> (2)  the entity that made such payment.

11 U.S.C.A. § 329 (West 2010). It is ultimately for the court to decide whether or not the

compensation is reasonable under Section 329(b). "What constitutes reasonableness is a question

of fact to be determined by the particular circumstances of each case. The requested compensation

may be reduced if the court finds that the work done was excessive or of poor quality." 3 Alan N.

Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 329.04[1], at 329-14 (16th ed. 2010) ("*Collier

on Bankruptcy*"). In determining the reasonableness of a given fee, the court should consider factors

including the "competence of the performance" and the "nature of the services." *In re Grant*, 14

B.R. 567, 569 (Bankr. S.D.N.Y. 1981). "Once a question of the reasonableness of counsel's fees is

raised by a party in interest bringing a motion, the attorney bears the burden of proving his fee was

reasonable." *In re Wood,* 408 B.R. 841, 848 (Bankr. D. Kan. 2009); *see also Snyder v. Dewoskin*

*(In re Mahendra),* 131 F.3d 750, 757 (8th Cir. 1997), *cert. denied*, 523 U.S. 1107 (1998).[15]

        **2.**      **Rule 2016(b)**

Rule 2016(b) of the Federal Rules of Bankruptcy Procedure provides as follows:

> *Disclosure of Compensation Paid or Promised to Attorney for Debtor*. Every
> attorney for a debtor, whether or not the attorney applies for compensation, shall file
> and transmit to the United States trustee within 14 days after the order for relief, or
> at another time as the court may direct, the statement required by § 329 of the Code
> including whether the attorney has shared or agreed to share the compensation with
> any other entity. The statement shall include the particulars of any such sharing or
> agreement to share by the attorney, but the details of any agreement for the sharing
> of the compensation with a member or regular associate of the attorney's law firm
> shall not be required. *A supplemental statement shall be filed and transmitted to the
> United States trustee within 14 days after any payment or agreement not previously
> disclosed.*

Fed. R. Bankr. P. 2016(b) (emphasis added).

Fee-disclosure directives contained in the Bankruptcy Code and Rules are mandatory and

"require 'direct and comprehensive' disclosures." *McTyeire v. Hunt (In re McTyeire),* 357 B.R. 898

(Bankr. M.D. Ga. 2006). *See also McMullen v. Schultz*, 428 B.R. 4, 13 (D. Mass. 2010) ("[F]ull and

timely disclosure of the details of a fee arrangement is mandatory." (internal quotation marks

omitted)).   Compliance with fee disclosure obligations imposed upon a debtor's attorney is

particularly necessary to the administration and disposition of Chapter 7 and Chapter 13 cases

because those cases involve a voluminous number of relatively small individual cases. *Cf. In re*

*Whaley,* 282 B.R. 38 (Bankr. M.D. Fla. 2002).   "The duty of disclosure imposed by Rule 2016(b)

is a continuing one.  If a debtor's attorney subsequently receives funds, the attorney must make the

---

[15]      The court would reach the same result here even if the burden of proof were reversed.

required disclosure by supplementing any prior disclosure." 9 *Collier on Bankruptcy* ¶ 2016.17, at

2016-20.

> Complete disclosure is mandated under the Bankruptcy Code and Rules and failing
> to meet those disclosure requirements with total candor can result in severe
> consequences. "Indeed, it has long been the practice in [the Second Circuit] to deny
> compensation to counsel who fail to comply with the disclosure provisions . . . ."
> *Futuronics*, 655 F.2d [463,] 469 [(2d Cir. 1981)]; *see also Kero-Sun*, 58 B.R. [770,]
> 779 [(Bankr. D. Conn. 1986)] (finding attorney's violation of disclosure
> requirements, *inter alia*, warranted ordering the disgorgement of fees not reported);
> *Prudhomme*, 43 F.3d [1000,] 1003 [(5th Cir. 1995)] ("[T]he court's broad discretion
> in awarding and denying fees paid in connection with bankruptcy proceedings
> empowers the bankruptcy court to order disgorgement as a sanction to debtor's
> counsel for nondisclosure."); *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 937-38
> (2d Cir.1979) (finding no abuse of discretion in court's order of disgorgement of all
> fees where counsel failed to divulge all connection with debtor and failed to disclose
> all fees); *cf., Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493,
> 85 L.Ed. 820 (1941) (using denial of compensation as a tool for strict enforcement
> of conflict-of-interest rules).

*In re Laferriere,* 286 B.R. 520, 526-27 (Bankr. D. Vt. 2002).

**B.**    **Application of Law to Facts**

    **1.**    **Amendment Fee**

As noted above, Attorney Anderson collected the Amendment Fee but never amended the

Disclosure to reflect that.  The policy of full disclosure behind Rule 2016(b) requires that Attorney

Anderson disgorge the Amendment Fee to the Debtor.  *See In re Laferriere, supra.*

    **2.**    **Further Disgorgement**

The remaining question is whether Attorney Anderson should be required to disgorge a

further $800.00 because the Debtor should not have had to pay either the First Consultation Fee or

the Second Consultation Fee.  In fairness to Attorney Anderson, determination of the foregoing

would require further proceedings because she did not have an adequate opportunity to prepare for

the OTSC Hearing. (*See* Trans. at 5 *et passim.*)[16]  Determination of the foregoing also would require

an answer to the legal question of whether the description of Attorney Anderson's representation in

the Disclosure bound her to represent the Debtor (including appearing at relevant hearings)[17] with

respect to her exemption objections notwithstanding the terms and conditions of the Retainer

Agreement.  Further, determination of the foregoing also would require the court to determine the

adequacy of Attorney Anderson's counseling of the Debtor with respect to the Debtor's exemptions.

However, the court does not deem further proceedings necessary nor does the court deem it

necessary to resolve the foregoing questions to reach a determination here for the reasons which

follow.[18]

       As discussed above, Attorney Anderson represented the Debtor with respect to a claim of

nondischargeability by a creditor and, in fact, obtained a favorable result for her through negotiation

without any litigation.   Construing paragraphs 5 and 6 of the Disclosure together, non-

dischargeability matters even not going to litigation were outside of the scope of the subject

representation under the terms of the Disclosure (at least arguably).  Accordingly, the court deems

it fair to give Attorney Anderson credit for the value of those services against the $800.00 potential

disgorgement.  Doing "rough justice," the court assigns a value of at least $800.00 to those services.

---

[16]       For example, Attorney Anderson was unclear about the substance and timing of any
agreements she may have had with the Trustee with respect to the Debtor's exemptions.

[17]       For example, paragraph 6 of the Disclosure did not exclude from the subject
representation the matters described hereinabove but, rather, excluded only "adversary proceedings"
and other dissimilar matters.  (*See* ECF No. 1 (Disclosure).)

[18]       Accordingly, no such determinations are made herein.

Therefore, the court exercises its discretion and concludes that no further disgorgement by Attorney Anderson would be appropriate here.

**III.    <u>CONCLUSION</u>**

For the reasons set forth above, Attorney Anderson hereby is ordered to disgorge to the Debtor the sum of $226.00 on or before December 17, 2010. Compliance with the foregoing shall be evidenced by an affidavit of Attorney Anderson filed on or before December 23, 2010.

It is **SO ORDERED.**

Dated: December 9, 2010                                    BY THE COURT

                                                                    **Lorraine Murphy Weil**
                                                            **Chief United States Bankruptcy Judge**

-14-